JOYCE ALDRICH & others,[1] trustees,[2] *vs.* ADD INC.

Suffolk. April 4, 2002. - June 21, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Condominiums,* Master deed. *Real Property,* Condominium. *Limitations, Statute of. Corporation,* Corporate successor liability. *Negligence,* Design, Construction work, Economic loss. *Actionable Tort. Repose, Statute of.*

In an action for the negligent design of an improvement to real property, namely the construction of a condominium, summary judgment was erroneously granted for the architect of the condominium where, because the trustees of the condominium trust (plaintiffs) were not successors to the developer that retained the architect to design the condominium, the plaintiffs' cause of action was not governed by the accrual date set forth in the owner-architect agreement, but rather by the provisions of the second clause of G. L. c. 260, § 2B, a statute of repose, which had not expired on the date the plaintiffs filed their complaint. [218-222]

In an action against an architect for the negligent design of an improvement to real property, namely the construction of a condominium, the judge correctly denied the architect's motion for summary judgment on the ground that the economic loss rule did not bar the plaintiffs' negligence claim, where the plaintiffs' pleadings and affidavits alleged physical property damage sufficient to state a cause of action for negligence against the architect. [222-223]

CIVIL ACTION commenced in the Superior Court Department on July 29, 1993.

A motion for summary judgment was heard by *Margaret R. Hinkle,* J.; a second motion for summary judgment was heard by *John C. Cratsley,* J.; and a motion for leave to amend the complaint was heard by *Diane M. Kottmyer,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Janet B. Fierman (Thomas W. Evans & Paul Giragos* with her) for the plaintiffs.

---

[1]Linda Cargill, David DeLellis, Barbara Flockhart, and Joseph G. Vecchia, Jr.

[2]Of the Seal Harbor III Condominium Trust.

*Warren D. Hutchison (Matthew M. O'Leary* with him) for the defendant.

SPINA, J. The plaintiffs, trustees of the Seal Harbor III Condominium Trust (trust), brought this action against ADD Inc., an architectural firm (architect), to recover damages for the negligent design of the Seal Harbor III Condominium (condominium). The architect moved for summary judgment on the ground that the plaintiffs' claim was barred by the economic loss rule. A judge in the Superior Court denied that motion. A second judge granted the architect's subsequent motion for summary judgment on the ground that the plaintiffs' claim was time barred by the three-year limitation set forth in G. L. c. 260, § 2B. A third judge denied the plaintiffs' motion for leave to amend their complaint to add a claim for breach of express warranty. We granted the parties' joint application for direct appellate review. The issues now before us are whether (1) the second judge erred in concluding that the plaintiffs were the successor in interest to the owner of the property on which the condominium was built and, therefore, were subject to an expired contractual time limitation governing a cause of action between such owner and the architect; (2) the first judge erred in concluding that the plaintiffs' tort claim against the architect was not barred by the economic loss rule; and (3) the third judge erred in denying the plaintiffs' motion for leave to amend their complaint. We vacate the allowance of summary judgment based on the theory of successorship, affirm the denial of summary judgment based on the economic loss rule, and remand the case for further proceedings consistent with this opinion.

1. *Background.* The condominium, located on a peninsula in Winthrop, is a ten-story building containing 117 residential condominium units and approximately 153 parking spaces in an underground garage. As of 1984, a developer, Dolphin Real Estate Corporation (Dolphin), owned the land on which the condominium was to be situated. Dolphin retained the architect to provide design services in connection with the construction of the condominium, which was to be built by Sanford Construction Company, Inc. (contractor).

In late 1984, Dolphin and the architect entered into a standard form of agreement between owner and architect (owner-architect

agreement), as promulgated by the American Institute of Architects. Pursuant to this agreement, the basic services to be provided by the architect included (1) review and evaluation of the project, including the preparation of schematic design documents illustrating the scale and relationship of project components; (2) refinement of the building and site design generated in the schematic design phase; (3) preparation of drawings and specifications for construction that fully complied with all applicable Federal, State, and local laws, ordinances, and codes; and (4) administration of the construction contract between Dolphin and the contractor, including site inspection visits. The architect's obligations under the owner-architect agreement terminated when final payment to the contractor was due, or sixty days after the date of substantial completion of the work, whichever came first. Dolphin was responsible for such activities as paying construction costs, compensating the architect, and furnishing all legal, accounting, and insurance services as may be necessary.

Construction of the condominium began in the spring of 1986. On July 28, 1987, Dolphin filed a master deed in the Suffolk County registry of deeds, pursuant to G. L. c. 183A, § 2. The master deed identified several entities connected with the condominium: (1) the "Sponsor," defined as Dolphin and its "successors and assigns"; (2) the trust which, through the plaintiffs, would manage and regulate the condominium; and (3) the unit owners. Dolphin, for itself and its successors and assigns, reserved certain rights and easements to complete construction of the condominium and develop the surrounding land. The architect, with the agreement of Dolphin and the contractor, signed a certificate of substantial completion, designating August 11, 1987, as the date when construction of the condominium would be substantially complete.[3] Dolphin began to sell units in the condominium in late August or early

[3]Pursuant to the certificate of substantial completion, "[t]he Date of Substantial Completion of the Work or designated portion thereof is the Date certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner can occupy or utilize the Work or designated portion thereof for the use for which it is intended, as expressed in the Contract Documents."

September, 1987. The final certificate for payment was issued on November 2, 1987.

Starting from the time of completion, there were structural problems in the condominium. During storms, water would penetrate the windows, sliding glass doors, walls, and ceilings. Water also seeped into the underground garage, causing damage to its concrete roof deck and to cars parked below it. The plaintiffs were forced to expend significant sums of money to repair water-damaged common areas.

On July 29, 1993, the plaintiffs filed a complaint against the architect alleging that it had been negligent in designing or selecting materials for use in the construction of the condominium.[4] The plaintiffs sought to recover damages for the defective portions of the common areas.[5]

On November 23, 1994, the architect filed a motion for summary judgment specifically alleging that the plaintiffs' claim was barred by the economic loss rule. A judge in the Superior Court initially allowed the motion, concluding that the plaintiffs had "not submitted evidence that the defects in the design of the Condominium 'created a dangerous condition posing a risk of accidental injury to persons or to property other than the physical deterioration attributable solely to the failure of the products of the construction themselves, and ha[d] not claimed any damages other than . . . economic loss, i.e., the cost of repair to the [defective portions of the Condominium common areas], for which there is no recovery in negligence.' " *Lake Placid Club Attached Lodges* v. *Elizabethtown Bldrs., Inc.*, 131 A.D.2d 159, 162 (N.Y. 1987). Following discovery with other parties, the plaintiffs filed a motion pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), to revise and vacate the judge's order. The judge allowed the plaintiffs' motion, stating that newly discovered evidence suggested that the negligent acts of the architect had caused physical harm, primarily the result of

---

[4]The complaint also named as defendants other companies responsible for the design, construction, certification, marketing, and sale of the condominium units, as well as some of the principals of those companies. The plaintiffs have settled with all parties except the architect.

[5]The plaintiffs filed a motion to amend their complaint to add, inter alia, a claim for breach of implied warranty against the architect; the motion was denied.

rain penetration, to common areas of the building, individual units, and cars parked in the garage. The summary judgment record further suggested a possible risk of personal injury from structural or material failure. The judge concluded that the plaintiffs' claim was not barred by the economic loss rule because the architect's alleged negligence had caused physical harm to the condominium, for which the plaintiffs had a right to recover.

On September 12, 1997, the architect filed another motion for summary judgment on the grounds that the plaintiffs were Dolphin's successor under art. 12 of the owner-architect agreement[6] and that, consequently, their claim was barred by the applicable three-year limitation, G. L. c. 260, § 2B,[7] as contractually refined by such agreement.[8] By memorandum of decision and order, a Superior Court judge allowed the architect's motion. He agreed that the plaintiffs were Dolphin's "successor," merely stepping into Dolphin's shoes with respect to the work contracted for with the architect. As such, the plaintiffs were bound by the provisions of the owner-architect agreement, and their cause of action for the architect's negligence was

[6]Section 12.1 of the owner-architect agreement provides: "The Owner and the Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither the Owner nor the Architect shall assign, sublet or transfer any interest in this Agreement without the written consent of the other."

[7]General Laws c. 260, § 2B, states: "Action[s] of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property, other than that of a public agency as defined in [G. L. c. 7, § 39A,] shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

[8]Paragraph 11.3 of the owner-architect agreement provides: "As between the parties to this Agreement: as to all acts or failures to act by either party to this Agreement, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the relevant Date of Substantial Completion of the Work, and as to any acts or failures to act occurring after the relevant Date of Substantial Completion, not later than the date of issuance of the final Certificate for Payment."

deemed to have accrued on August 11, 1987, the date the certificate of substantial completion was issued. The judge noted that G. L. c. 260, § 2B, barred any claim filed more than three years after the cause of action accrued. In light of the fact that the plaintiffs did not file their complaint until July 29, 1993, the judge concluded that summary judgment was warranted because the statute of limitations had expired.

In response to the judge's decision, the plaintiffs filed a motion for leave to amend their complaint pursuant to Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), to add a claim for breach of express warranty against the architect. The motion was denied, and judgment entered for the architect.

2. *Theory of successorship.* The plaintiffs contend that the judge below erred in granting summary judgment to the architect because they were not a successor to Dolphin under the owner-architect agreement.[9] Therefore, their cause of action was not time barred by the applicable limitation period and the related provision of the agreement. We agree.

Typically, "a succeeding corporation is liable on the contracts or obligations of its predecessor where it either assumes them under express agreement or where the facts and circumstances are such as to show an assumption." *Araserv, Inc.* v. *Bay State Harness Horse Racing & Breeding Ass'n, Inc.*, 437 F. Supp. 1083, 1089 (D. Mass. 1977). See *Pittsfield Gen. Hosp.* v. *Markus*, 355 Mass. 519, 521 (1969), and cases cited. Fundamentally, the plaintiffs' claim here is not one rooted in contract theory because clearly they were not a party to the owner-architect agreement. Rather, the plaintiffs' cause of action is a tort claim for negligence. Cf. *Cigal* v. *Leader Dev. Corp.*, 408 Mass. 212, 216-218 (1990) ("a contractually based injury is entirely distinct from the torts for which the unit owners' association may recover").

The filing of the master deed did not make the plaintiffs the

---

[9]An order granting summary judgment will be upheld if the judge ruled on undisputed material facts and those rulings were correct as a matter of law. See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). The initial burden in a motion for summary judgment rests with the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

equivalent of Dolphin's "successor," nor did they assume Dolphin's rights and obligations vis-à-vis the architect under the owner-architect agreement. The filing of a master deed divides interests formerly held by one entity in fee simple into separate and distinct real estate interests. See *Bernstein* v. *Chief Bldg. Inspector & Bldg. Comm'r of Falmouth*, 52 Mass. App. Ct. 422, 427 (2001) ("Our decisions have recognized condominium units and common areas to be adjacent parcels of land"). The master deed defined Dolphin, the plaintiffs, and the unit owners as separate entities. Dolphin retained title to the 117 individual units, which it subsequently sold to third parties. The plaintiffs' role was to manage and regulate the condominium. They were entitled to an undivided interest, along with all other unit owners, in the common areas, with respect to which they were empowered to conduct litigation pursuant to G. L. c. 183A, § 10 (*b*) (4). See *39 Joy St. Condominium Ass'n* v. *Board of Appeal of Boston*, 426 Mass. 485, 487 (1998) (describing interests owned and rights exercised by unit owners and condominium association). Notwithstanding the plaintiffs' interests, Dolphin retained certain rights and easements to complete construction of the condominium and develop the surrounding land.[10] The mere purchase of an asset does not make the purchaser the "successor" of the seller, bound by the seller's contractual obligations with other parties. Cf. *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 359 (1997) (liabilities of selling predecessor corporation not imposed on successor that purchased its assets unless successor expressly or impliedly assumed liabilities, transaction is de facto merger or consolidation, successor is mere continuation of predecessor, or transaction is fraudulent effort to avoid liabilities); *City of N.Y.* v. *Turnpike Dev. Corp.*, 36 Misc. 2d 704, 706 (N.Y. Sup. Ct. 1962) (term "successor in interest," as distinguished from "successor in title," involves change in form, not substance, of ownership, and does not include transfer of title from one party to another);

---

[10]As evidence of Dolphin's continued ownership interest in the condominium, the project application for payment that was dated November 2, 1987, over three months after the recording of the master deed, included a certificate by the architect to Dolphin, as owner, that the construction work had progressed in accordance with the owner-architect agreement and that the contractor was entitled to payment from Dolphin.

*Farm & Home Sav. Ass'n* v. *Strauss,* 671 S.W.2d 682, 685 (Tex. Ct. App. 1984) (mere purchase of property that was once subject to limiting contractual provision not sufficient to bind purchaser to contract as "successor" to original owner). The master deed did not have the effect of making the plaintiffs parties to Dolphin's contracts. They did not "succeed" Dolphin with respect to the owner-architect agreement, nor did they take over Dolphin's business.

The present controversy is not governed by this court's decision in *Theos & Sons* v. *Mack Trucks, Inc.,* 431 Mass. 736 (2000), as the architect suggests. In that case, the plaintiff, a subsequent purchaser of a used truck, was attempting to enforce an implied warranty of merchantability against the truck's manufacturer pursuant to G. L. c. 106, § 2-318, which extends warranties "to third parties who may reasonably be expected to use the warranted product." *Id.* at 740. The manufacturer had specifically disclaimed this warranty in its contract with the original purchaser of the truck, but the plaintiff was unaware of such disclaimer. *Id.* at 739-740. We concluded that a subsequent purchaser bears the burden of ascertaining the existence of any limitations on implied warranties and, therefore, the plaintiff was subject to the same disclaimer made by the manufacturer to the original purchaser. *Id.* at 741. The present case is a cause of action in tort for the negligent design of an improvement to real property, namely the construction of the condominium. It is not about the sale of goods, nor does it concern a claim for breach of warranty pursuant to a contract for such sale.

In light of our conclusion that the plaintiffs' claim is based in tort, not contract, and that the plaintiffs did not become Dolphin's "successor" on the filing of the master deed, their cause of action is not governed by the accrual date set forth in par. 11.3 of the owner-architect agreement.[11] Rather, the plaintiffs' claim is subject to the provisions of the second clause of G. L. c. 260, § 2B, which is a statute of repose, not a statute

[11]The plaintiffs have asserted that the third Superior Court judge incorrectly denied their motion for leave to amend their complaint to add a claim for breach of express warranty against the architect. Because we have concluded that in the circumstances of this case the plaintiffs have no contractual rights under the owner-architect agreement, we need not consider this issue further.

of limitations. See note 7, *supra.* See also *Conley* v. *Scott Prods., Inc.*, 401 Mass. 645, 646 (1988); *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982); *Coca-Cola Bottling Co. of Cape Cod* v. *Weston & Sampson Eng'rs, Inc.*, 45 Mass. App. Ct. 120, 124 (1998). "A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. . . . A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered." *Klein* v. *Catalano, supra.* See *McGuinness* v. *Cotter*, 412 Mass. 617, 621-622 (1992). General Laws c. 260, § 2B, precludes recovery against those within its purview for any injury that occurs "more than six years after the earlier of the dates of (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner." The statute of repose sets the outer time limit for bringing an action in tort. "Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry."[12] *Klein* v. *Catalano, supra.* See *Snow* v. *Harnischfeger Corp.*, 12 F.3d 1154, 1159 (1st Cir. 1993), cert. denied, 513 U.S. 808 (1994) (statute shields providers of individual expertise, including architects, engineers, and contractors from any liability after six years where they were involved in enumerated activity pertaining to improvement to real property); *James Ferrera & Sons* v. *Samuels*, 21 Mass. App. Ct. 170, 173 (1985). "In establishing the six-year limit, the Legislature struck what it considered to be a reasonable balance between the public's right to a remedy and the need to place an outer limit on the tort liability of those involved in construction." *Klein* v. *Catalano, supra* at 710.

Here, a certificate of acceptance and occupancy pursuant to which the town of Winthrop granted Dolphin permission to occupy the condominium was issued on August 3, 1987. The designated date of substantial completion of the condominium

[12]"Although G. L. c. 260, § 2B, is phrased as if it were a statute of limitations that bars an injured person from commencing an action, its effect is to abolish or abrogate a remedy in tort if the person is injured more than six years after the [occurrence of a specified event]." *Klein* v. *Catalano*, 386 Mass. 701, 702-703 n.3 (1982).

was August 11, 1987. By September, 1987, the individual units had begun to be occupied. Because the plaintiffs' complaint was filed on July 29, 1993, we conclude that the statute of repose did not expire on their cause of action against the architect for negligent design.[13]

3. *Economic loss rule.* The plaintiffs contend that the first judge below correctly denied the architect's motion for summary judgment on the ground that the plaintiffs' negligence claim was not barred by the economic loss rule. We agree.

It has been a long-standing rule in this Commonwealth, in accordance with the majority of jurisdictions that have considered this issue, that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp.* v. *Boston Edison Co.*, 415 Mass. 393, 395 (1993). See *Garweth Corp.* v. *Boston Edison Co.*, 415 Mass. 303, 305 (1993); *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 107 (1989). However, where the pecuniary losses sustained by a plaintiff result from physical harm to property proximately caused by a defendant's alleged negligence, such plaintiff has a right to recovery. See *Priority Finishing Corp.* v. *LAL Constr. Co.*, 40 Mass. App. Ct. 719, 721 (1996) (bailee of damaged goods entitled to maintain cause of action for physical harm to property). Cf. *Newlin* v. *New England Tel. & Tel. Co.*, 316 Mass. 234, 237 (1944) (plaintiff had right to sue defendant in negligence where alleged poor maintenance of telephone pole caused it to fall, disrupting electrical service to mushroom plant and resulting in destruction of plaintiff's mushroom crop).

The plaintiffs' pleadings and affidavits allege physical property damage sufficient to state a cause of action for negligence against the architect. Cf. *McDonough* v. *Whalen,*

---

[13]On appeal, the architect argues that the plaintiffs were aware of the various alleged defects more than three years prior to filing suit, and that their negligence claim is therefore barred by the three-year limitation period set forth in the first clause of G. L. c. 260, § 2B. The architect did not move for summary judgment on that ground, the plaintiffs have not had an opportunity to develop the record pertaining to this issue, and we will not consider the architect's argument for the first time on appeal. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 87-88 (1977); *Commerce Bank & Trust Co.* v. *Hayeck*, 46 Mass. App. Ct. 687, 695-696 (1999).

365 Mass. 506, 512-513 (1974) (imposing liability on septic system designer where negligence caused physical damage to property in the form of sewage flowing over land). The negligence alleged by the plaintiffs caused physical harm to the common areas of the condominium necessitating the expenditure of substantial sums of money to repair the damage. Accordingly, summary judgment could not enter in the architect's favor on the ground that the plaintiffs' claim was barred by the economic loss rule.

4. *Conclusion.* The November 19, 1997, order granting summary judgment to the architect on the theory of successorship is vacated. The May 1, 1997, order denying summary judgment to the architect on the basis of the economic loss rule is affirmed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*