FabricaNT, Judith, J.
INTRODUCTION
This action arises from the construction of Millennium Place, a large-scale residential, hotel, and commercial condominium project in downtown Boston. The plaintiff, as president of the association of unit owners of one of the four components of the project, alleges that the project suffers from construction defects, and that the developer and its appointed majority of the board of managers have refused to take action to remedy the problems or to assert claims against the entities involved in the construction. Before the Court are a motion to dismiss filed by the members of the board of managers and the developer, a separate motion to dismiss filed by the construction manager, and a motion by the architect to join in that motion. For the reasons that will be explained, the developer’s and managers’ motion will be denied, provided that the plaintiff complies with an order to amend the complaint. Bovis’s motion will be allowed in part and denied in part, and CBTs motion to join will be allowed, with substantive rulings on the claims against CBT identical to those on the claims against Bovis.
BACKGROUND
The verified complaint, along with exhibits appended to it, provides the following factual allegations. Millennium Place is located “on either side of Avery Street” in downtown Boston. It was developed by a set of entities identified in the complaint as New Commonwealth Center Limited Partnership and New Commonwealth Residential Co., LLC d/b/a Millennium Partners-Boston (collectively, “the developer”). The project is a two-tier condominium, consisting of four separate condominiums which, together, make up what is referred to as the primary condominium. The four second-tier condominiums include one commercial and three residential, known as North High-Rise, North Low-Rise, and South. Each second-tier condominium has its own association of unit owners, known as the North High-Rise Residential Association, the North Low-Rise Residential Association, the South Residential Association, and the Commercial Association. The primary condominium is controlled by a seven-member board of managers, consisting of the president of each of the three residential unit owners’ associations, and four managers appointed by the Commercial Association. The three residential associations are under the control of their unit owners; the Commercial Association remains under the control of the developer. The plaintiff, Keith Oates, is president of the North High-Rise Association, and by virtue of that position is its representative on the board of managers of the primary association. The developer has appointed four of its employees to the four positions on the primary association board of managers that it controls through the Commercial Association.
The project consists of two buildings, referred to as the North and South buildings. The North High-Rise and the North Low-Rise condominiums, with 132 and 63 residential units, respectively, are both located in the North building. The South condominium, with 172 residential units, is located in the South building. The parking garage, which services all the residential as well as the commercial condominiums, is located in the South building; commercial parking is on floors 1 through 4, and parking for the residential units is on floors 4 and 5.
*392 After the residential unit owners took control of their associations, they identified certain defects in the buildings. In a letter from its counsel dated June 3, 2005, the North High-Rise Association notified the developer of what it characterized as “certain defective design and/or construction elements or omissions in the building,” and demanded that the developer cure the problems or “make payment to the Board [of North High-Rise] sufficient to allow it to cure the problems.” The construction problems identified related to concrete in a stairwell, balancing of the ventilation system, drainage on balconies, heat pumps and thermostats in units, stairwell door closers, fire-proofing at fire wall penetrations, lack of plumbing access panels, inadequate roof fans, security measures for the service elevator, and dents in an elevator panel.
Some of these issues, it appears, were resolved, but some remained. The North High-Rise Association’s counsel sent two further letters to the developer, dated August 24, 2006, identifying defects and demanding relief pursuant to G.L.c. 93A. The construction defects asserted in those letters consisted of inappropriately located thermostats in residential units, inefficient roof fans, certain apparently relatively minor deficiencies in Are safety facilities and in the parking garage, and, most significant, lack of waterproofing membranes on the floor slabs in the parking garage, resulting in water intrusion. As to the garage water issue, the letter stated that “[t]he possibility of premature failure of the Parking Garage’s structure and systems presents a serious safety issue; moreover, such failures would undoubtedly result in a special assessment on the Primary Units, and my clients have no intention of paying for corrective work that originates from poor design and/or construction . . .” It went on to state that the lack of waterproofing in the parking garage “leads to both structural problems (deterioration of concrete, and rusting of the rebar) and maintenance problems (salts staining the walls and dripping onto parked cars).”
The issues regarding the parking garage were not resolved, and counsel for North High-Rise sent another letter, dated November 22, 2006, to counsel for the board of managers of the primary association, demanding that the primary board demand action from the developer to address the problem. On March 29, 2007, the North-High Rise Residential Association filed suit in this Court against the developer, the Primary Association, and the Commercial Association, claiming negligence, breach of fiduciary duly, and violation of G.L.c. 93A with respect to certain accounting issues and with respect to certain alleged building defects, particularly in the parking garage.[2], [3]
Both the North and South High-Rise Associations have made multiple demands on the Primary Association to take action with respect to the construction defects, including by filing suit against the developer and the various entities involved in the design and construction prior to the running of the statute of repose. At a meeting of the board of managers of the Primary Association on July 3, 2007, the managers voted on whether to file such a suit. The three presidents of the residential associations voted for, while the four managers appointed by the Commercial Association voted against.
The plaintiff brought this action on July 6, 2007. He purports to sue “as President of the Millennium Place North High-Rise Residential Association.” Named as defendants are the four members of the Primary Association Board of Managers who were appointed by the developers through the Commercial Association; the two entities identified collectively as the developer; Bovis Lend Lease LMB, Inc. (“Bovis”), identified as the general contractor;[4] Gary Edward Handel & Associates, identified as the design architect; CBTArchitects, Inc., identified as the architect of record; Cosentini Associates, Inc., identified as the mechanical, electrical and plumbing engineer; and DeSimone Consulting Engineers, Inc., identified as the structural engineer. The Primary Association is also named, apparently as a nominal party; no relief is sought against it.
The complaint sets forth four counts. Count I claims breach of fiduciary duty by the four developer-appointed managers of the Primary Association. Count IV claims indemnification from those same four defendants for the costs of bringing the claims against the other defendants. Counts II and III claim negligence and breach of contract, respectively, by all other defendants. The prayers for relief seek damages to be paid to the Primary Association from all other defendants, and attorneys fees and costs to be paid to the plaintiff by the developer-appointed managers.
In connection with the present motions, the parties have provided certain documents that extend beyond the pleadings, but that are properly considered on a motion to dismiss because they are either referenced or relied on in the complaint or are matters of public record. See Schaer v. Brandeis University, 432 Mass. 474, 471 (2000). Among these are copies of contracts between the developer and Bovis and the architect, and certificates of occupancy issued by the City of Boston Inspectional Services Department. These documents provide certain additional facts that bear on the present motions, to be discussed infra.
DISCUSSION
1. The Developer’s and Managers’ Motion to Dismiss
The developer and the four defendant managers of the primary association move to dismiss the complaint on the grounds that Oates lacks standing to bring a derivative claim on behalf of the primary association, and that he is not the real party in interest. These arguments essentially amount to the same thing: the proper plaintiff here is not Oates, but the North HighRise Association of which he is president. The Court *393 agrees, but concludes that dismissal is not required; the problem can easily be solved by an amendment to substitute the name of the Association as plaintiff.
Mass.R.Civ.P. 17(a) provides that, with a single exception not applicable here, “every action shall be prosecuted in the name of the real party in interest.” The rule goes on to provide that certain fiduciaries, including the “trustee of an express trust... or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought.” The rule goes on to provide that “(n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for . . . joinder or substitution of, the real party in interest.”
Here, it is plainly apparent from the allegations of the complaint — and Oates does not deny — that the real party in interest is North High-Rise Association. North High-Rise, unlike Oates, is a member of the Primary Association, and therefore has standing to bring a derivative claim on its behalf. As a member of the Primary Association, North High-Rise Association would benefit, along with the other members, from any recovery that might be obtained. Oates is not a member of the Primary Association; his membership on its Board of Managers is afunction of his role as president of North High-Rise. Under G.L.c. 183A, § 10(b)(4) North High-Rise Association has statutory authority to sue and be sued, and has the exclusive power to represent its unit owners in litigation. See Cigal v. Leader Dev. Corp. 408 Mass. 212, 217 (1990).
Oates contends that he brought this action “in his representative capacity as President of the North HighRise Association,” which can act only through agents. He points out that North High-Rise Association’s bylaws empower its managers to take all necessary actions in furtherance of the powers of the association. The short answer to that point is that the Association’s by-laws cannot trump the rules of civil procedure; as president, he may be empowered by the by-laws to make the decision to sue in the name of the association, to engage counsel to do so, and to verify the complaint, but he is not authorized to sue in his own name on behalf of the association, because Rule 17(a) requires that any suit on behalf of the association be brought in its own name. Oates also points to cases litigated in the name of condominium trustees. Such litigation by a “trustee of an express trust” is explicitly authorized by Rule 17(a); similar action by the president of an association that has statutoiy authority to sue and be sued is not.[5]
At argument, although not in his papers, Oates also relied on G.L.c. 183A, §10(1), which provides that the “president... of the governing board of the condominium may, when so empowered, act for the organization of unit owners and references herein to the organization of unit owners shall include such person or persons when so empowered.” This general provision must be construed in light of Rule 17(a), of which the legislature must be assumed to have been aware. See generally, Suliveres v. Commonwealth, 449 Mass. 112, 116 (2007), citing Commonwealth v. Callahan, 440 Mass. 436, 440-41 (2003). If the legislature had intended to authorize the president to sue in his own name on behalf of the association, language more specifically referencing litigation would have conveyed that intent. In the absence of such language, the Court does not construe this provision as creating an exception to the rule.
As Rule 17(a) expressly requires, the Court will refrain from dismissing the complaint at this time, instead permitting the plaintiff an opportunity to amend the complaint, within thirty days, to substitute the North High-Rise Association for Oates as plaintiff. The Court will address the remaining issues on that basis. Such amendment will cure any standing defect, since North High-Rise is indisputably a member of the Primary Association, and was at the time of the alleged breach of fiduciary duty. North High-Rise is therefore a proper party to bring a derivative action on behalf of the Primary Association pursuant to Mass.R.Civ.P. 23.1. Accordingly, the developer’s and managers’ motion to dismiss will be denied, provided that the plaintiff amends the complaint within thirty days to name North High-Rise Association as the plaintiff.
2. Boris's Motion to Dismiss
Boris moves to dismiss the complaint against it on a series of alternative grounds: (1) the contract claim fails to state a claim, because it does not allege any contractual relationship between North High-Rise[6] and Boris, and because the statute of limitations on contract claims has run since the project was opened to use in May of 2001; (2) the negligence claim falls to state a claim against Boris because it alleges only economic loss, and because it is time barred. Boris also contends that the complaint fails to meet the requirements for a derivative action.
As Boris points out, the complaint is devoid of any allegation of any contractual relationship between North High-Rise Association and Boris, and the facts alleged leave no doubt that none existed, since North High-Rise Association came into being after completion of the construction. The plaintiff attempts to rely on a third-party beneficiary theory, pointing out that the Construction Management Agreement between the developer and Boris referred to the anticipated sale by the developer of portions of the project.[7]
To assert a contract claim as a third-party beneficiary, a plaintiff must show that the parties to the contract intended to give the plaintiff the benefit of the promised performance. See Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366 (1997). The Court “look[s] at the language and circumstances of the contract for indicia of intention.” Id. “The intent must be clear and definite.” Id. at 366-67. Here, the *394 express language of the contract establishes the absence of any such intent; section 11.9 of the Construction Management Agreement provides that “nothing contained in this agreement shall be deemed to create a contractual relationship with or a cause of action in favor of any third party.” The contract claim therefore must be dismissed for failure to state a claim.[8] What remains is the claim of negligence.
The economic loss doctrine bars recovery on a negligence claim in the absence of personal injury or physical damage to property other than the property alleged to have been negligently constructed. See Berish v. Bornstein, 437 Mass. 252, 267-69 (2002); Aldrich v. Add, Inc., 437 Mass. 213, 216-17 (2002); FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993). Here, although the complaint itself provides little detail as to the nature of the harm alleged, the demand letters appended to the complaint set forth a list of claimed defects in the building as constructed. Nothing in the letters suggests personal injury.
The closest the letters come to claiming damage to property other than the building itself is the statement in the second letter from counsel for North High-Rise Association, dated August 24, 2006, that water infiltration “leads to . . . maintenance problems (salts staining the walls and dripping onto parked cars).” This statement leaves considerable room for doubt as to whether any such damage has occurred, or whether the author is merely asserting that water infiltration tends to cause such problems, posing a risk of increased maintenance costs to the association in the future. At this stage, however, the Court must read the complaint and its attachments broadly, drawing all reasonable inferences in favor of the plaintiffs. See Doyle v. Department of Indus. Accidents, 50 Mass.App.Ct. 42, 44 (2000). Under that standard, the Court cannot conclude that the complaint fails to allege any set of facts on which relief could be granted. See Berish, 437 Mass. at 268; Aldrich, 437 Mass. at 222. The economic loss doctrine will no doubt arise again at the stage of summary judgment, but the Court cannot dismiss the negligence claim on that ground at this time.
The Court therefore must address the timeliness issue as to the negligence claim. General Laws c. 260, §2B, provides both a statute of repose and a statute of limitations applicable to claims of negligence in connection with building construction. The repose portion of the statute bars claims “arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property” unless brought within six years after the earlier of “the opening of the improvement to use” or “substantial completion of the improvement and the taking of possession for occupancy by the owner.” The statute of repose operates as an absolute bar, extinguishing any cause of action upon the conclusion of the statutory period. See Klein v. Catalano, 386 Mass. 701, 702 (1982).
The issuance of a certificate of occupancy officially opens a building to use, and therefore triggers the start of the six-year period under the statute of repose. See Aldrich, 437 Mass. at 222. Here, the first certificate of occupancy was issued on May 29, 2001, more than six years before the filing of this action on July 6,2007. A month after the first certificate, but still more than six months before the filing of this action, the City issued a permit for a special event at the Loews Theater for up to 2000 people. The plaintiff points out that these certificates were temporary, and that they were only for parts of the building. The first of these issues is easily resolved, but the second is more problematic on the record as presented.
This Court is aware of no Massachusetts case addressing the issue of whether a temporary certificate of occupancy triggers the Massachusetts statute, but the federal district court for this district has decided that it does, in the absence of any limitation in the temporary certificate on the use to be made of the building during the temporary period. See Great Northern Ins. Co. v. Architectural Environments, Inc., 2007 U.S.Dist. LEXIS 71867 *6, 2007 WL 2800788 (2007). This Court agrees. The May 29, 2001, certificate imposes no limitation on the use to be made of the building during the period it was in effect. The Court concludes, therefore, that issuance of that certificate triggered the running of the six-year repose period for any claims of defect in those portions of the complex to which that certificate applied.
Exactly what those portions were, however, and how they relate to the claims in this case, is unclear on the record presently before the Court. As recited supra, the complaint describes the project as being located “on either side of Aveiy Street.” It alleges that the North High-Rise and the North-Low Rise condominiums, located in the North building, have 132 and 63 residential units, respectively; the South condominium, located in the South building, has 172 residential units; and the parking garage, which services all the residential as well as the commercial condominiums, is located in the South building. The alleged defects that form the basis of this action are in the North building and in the parking garage in the South building.
The May 29, 2001 temporary certificate applies to “1 Avery Street,” and identifies “the allowed use and occupancy” as “(140) Apts. & (56) Hotel Suites C/O— For (63) Hotel Suites FIs — Bsmt, Lobby Common Areas, Offices, Staff Spaces, Mechanical Room, Electrical Room, and Elevator Service rooms, Ancillary Thereto.” The June 28, 2001, certificate authorizes a “Special Event” to be held at the Loews Theatres, with an address of 175Tremont Street. The first permanent certificate of occupancy, dated April 1, 2002, applies to “1-3 Avery Street,” and describes the “allowed use *395 and occupancy” as “132 Apartments, 63 Hotel Suites, All Common Areas.” The November 25, 2002, permanent certificate of occupancy applies to “2-16 Avery Street,” with “the allowed use and occupancy described as ”(173) Apts. (1140) Parking Spaces, Cinemas, Hotel, Sports Club & (2) Retail."
These descriptions seem to suggest, but do not clearly establish, that the May 29, 2001, temporary certificate, and the April 1, 2002, permanent certificate, covered only the North building, that the June 28, 2001 certificate covered only the theater, and that November 25,2002, permanent certificate covered the South building, including the parking garage. Other evidence as to the meaning of the various certificates, and as to the earliest date of use of the relevant parts of the project, may be available, but is not before the Court at this stage. The Court therefore cannot resolve the issue of application of the statute of repose based on the present motion; the issue will remain open for further consideration at the stage of summary judgment.
Bovis also invokes the three-year statute of limitations established for negligence claims under G.L.c. 260, §2B. Its argument on this theory is based on White v. Peabody Construction Co., Inc., 386 Mass. 121, 130 (1982), where the Court observed that “widespread water leaks in a newly constructed building are almost certainly the result of design or construction defects." On that basis, Bovis contends that the plaintiff should have been aware of its claim as soon as it acquired its interests in the building, which Bovis contends occurred in 2001.
This argument, like the others addressed supra, may well prevail on summary judgment, but does not provide a basis for dismissal on the record now before the Court. The complaint in this case does not allege that the building suffers from “widespread water leaks,” nor, unlike the plaintiff in White, has the plaintiff here acknowledged awareness of defects from the beginning of its members’ occupancy. As discussed supra, the complaint, considered together with the documents appended to it, provides a list of defects, without sufficient detail to support a determination of when each reasonably should have been discovered. As to the most significant claimed defect, the lack of water membranes in the parking garage, the description provided leaves unclear whether any actual leakage has occurred at all. Nor, for that matter, does the complaint establish when the plaintiffs members first occupied the building. The Court cannot determine at this stage that the negligence claim is time-barred.
Bovis’s final contention is that the plaintiff has failed to meet the requirements for a derivative action under Mass.R.Civ.P. 23.1, because the complaint does not allege that it is brought on behalf of the Primary Association, and that the plaintiff has made demand on the individual members of the Primary Association; because the plaintiff was not a member of the Primary Association at the time of the construction; and because plaintiff does not fairly represent the interests of the Primary Association.
On the first of these points, the Court concludes that, although the point could have been made more expressly, the complaint does adequately allege that it is brought on behalf of the Primary Association. The introduction starts with the statement that the suit is a derivative action, and that the plaintiff seeks to enforce the right of the Primary Association to take legal action that it has refused to take. It then outlines the structure and control of the Primary Association, and alleges that the Primary Association has refused to sue “despite demand that it take action.” The introduction proceeds to describe the suit as brought “to force the Primary Association to take appropriate action and to preserve the Primary Association’s claims." The negligence count alleges that the Primary Association has been damaged, and the prayer for relief seeks payment of damages to the Primary Association. There is no room for doubt that the claim is brought on behalf of the Primary Association.
As to demand, the complaint alleges that the plaintiff, as well as the other two residential associations, made demand on the Primary Association, and that the representatives of the three residential associations voted to sue, but were overruled by the four representatives of the Commercial Association, which remains under the control of the developer. These allegations are enough to establish that demand on the members of the Primary Association would have been futile. See Harhen v. Brown, 431 Mass. 838, 844 (2000); compare Cote v. Levine, 52 Mass.App.Ct. 435, 442 (2001). The three residential members had already done everything within their power by their representatives’ votes to bring suit. The Commercial Association, by the same means, had made clear that it would not take action. No further demand was necessary.
The requirement under Rule 23.1 that the plaintiff be a member at the time of the alleged wrong serves to prevent a plaintiff from effectively buying a claim by buying an ownership interest after the fact, for the purpose of bringing the claim. See Billings v. GTFM, 449 Mass. 281, 291 n. 21 (2007). Clearly, that is not what happened here. At the time of the allegedly negligent construction — the wrong alleged against Bovis — the Primary Association did not exist, nor did any of its members. In the ordinary course of the establishment of a condominium, these entities would have come into being simultaneously, upon the filing of the master deed, which would have occurred after completion of construction. Assuming that procedure was followed — and nothing before the Court suggests that it was not — the plaintiff North-High Rise Association would have become a member of the Primary Association as soon as the two entities existed, and as *396 soon as the Primaiy Association had any members. The purposes of the rule are fully met by the plaintiffs membership in the Primaiy Association from that date.
As to the plaintiffs’ representation of the members of the Primary Association, Bovis argues that the complaint fails to identify any complaints made by the North Low-Rise Association and the Commercial Association. This argument ignores the allegation of the complaint that North Low-Rise’s representative voted in favor of bringing suit, and that the Commercial Association is under the control of the developer, which has designated its employees as the Commercial Association’s members of the Primaiy Association Board. Bovis’s theoiy seems to be, essentially, that North High-Rise Association cannot effectively represent the Commercial Association because they disagree. That theoiy would effectively bar any derivative suit, since a minority could never be found to adequately represent the controlling majority. That is not the law.
3. CBT Architects, Inc.’s “Joinder” to Bovis’s Motion.
On November 19, 2007, five days after the Court had heard argument on the two motions previously discussed, and taken them under advisement, defendant CBT Architects, Inc., filed a document captioned “Joinder to Bovis Lend Lease LMB, Inc.’s and the Design Professionals’ Respective Motions to Dismiss.” The document states that CBT joins Bovis’s motion, as well as a motion yet to be filed by Edward Handel & Associates, Cosentini Associates, Inc., and DeS-imone Consulting Engineering, Inc. (collectively, “the design professionals”), and urges the Court to dismiss the complaint against it for the same reasons argued in those motions. CBT adopts each of Bovis’s arguments, adding only a copy of its contract with the developer, which contains the same language discussed supra disclaiming any intent to confer any benefit on any third party. The plaintiff has filed an opposition to CBTs “Joinder,” adding to its previous arguments reference to certain other language in CBTs contract with the developer, as well as the contention that CBT has waived the theories now presented by filing an answer without raising them.
The Court treats CBTs “Joinder” as a motion for leave to join Bovis’s motion. As such, the Court will allow the motion to join, and will rule with respect to CBT in accord with its rulings on Bovis’s motion. On the contract issue, for the reasons discussed supra, the language CBT cites compels the conclusion that the plaintiff is not a third-party beneficiary of the contract. The more general language on which the plaintiff relies indicates only that the parties to the contract recognized that the project would include residential units. Nothing in that language meets the standard discussed supra to indicate an intention to benefit a third party. As to the waiver theoiy, failure to state a claim is not, as the plaintiff suggests, an affirmative defense that is waived if not pled in an answer, pursuant to Mass.R.Civ.P. 8(c), but is rather properly raised on motion pursuant to Mass.R.Civ.P. 12(b)(6). See also Mass.R.Civ.P. 12(h) (specifying defenses, not including failure to state a claim, that are waived if not raised by motion or in a responsive pleading).
CONCLUSION AND ORDER
For the reasons stated, the Court rules as follows on the pending motions. The Motion to Dismiss of Defendants Larkin, Ginsberg, Mooney, O’Brien, New Commonwealth Center Limited Partnership, and New Commonwealth Residential Co. LLC, is DENIED, provided that within thirty days of this date the plaintiff shall file an amended complaint substituting the name of the Millennium Place North High-Rise Residential Association for that of Keith E. Oates as plaintiff. Defendant Bovis Lend Lease LMB, Inc.’s Motion to Dismiss is ALLOWED with respect to count II of the complaint against Bovis, alleging breach of contract, and is otherwise DENIED. CBT Architects Inc.’s Join-der to Bovis Lend Lease LMB, Inc.’s Motion to Dismiss is treated as a motion to join, and as such, is ALLOWED, and count II of the complaint is ordered dismissed as against CBT Architects, Inc.

rhere seems to be considerable overlap between the claims raised in that case and those presented here against the same defendants. Consolidation may be appropriate at a later stage.

fyrhe South High-Rise Association also made a demand on the developer and the Primaiy Association, by letter from its counsel dated June 1, 2007, asserting deficiencies in the parking garage and in the south building.

Bovis identifies itself as the construction manager, rather than the general contractor. A copy of its contract with the developer, provided with its motion to dismiss, supports that characterization.

y'he point is not mere semantics. The manner in which Oates has chosen to frame the complaint has already created confusion, as reflected in the present motion to dismiss, which argues the issue of standing based on Oates’s lack of membership in the Primaiy Association, although the North High-Rise Association clearly is a member of the Primaiy Association.

As indicated supra, although Bovis presents its arguments based on Oates as the plaintiff, the Court will address them based on the anticipated amendment to substitute the North High-Rise Association.

The plaintiff properly does not contend that North HighRise has succeeded to the developer’s contract with Bovis. See Aldrich v. Add, Inc., 437 Mass. 213, 218-20 (2002).

he Court therefore will not address Bovis’s statute of limitations argument as to the contract claim.