BRIAN WYMAN & others,[1] trustees,[2] *vs.* AYER PROPERTIES, LLC.

No. 11-P-1046.

Middlesex. May 2, 2012. - December 12, 2012.

Present: CYPHER, GRASSO, & SIKORA, JJ.

Further appellate review granted, 465 Mass. 1105 (2013).

*Real Property,* Condominium. *Condominiums,* Common area. *Negligence,* Construction work, Economic loss, Pleading in civil action. *Practice, Civil,* Affirmative defense. *Damages,* Replacement or reconstruction of building, Repairs.

In a civil action brought in Superior Court arising from the plaintiff condominium trustees' claim against the defendant developer for negligent design and construction, the defendant's failure to plead the economic loss rule as an affirmative defense did not constitute waiver, given that property damage beyond pure economic loss and beyond damage to the product itself is an element of damages to be proved by the plaintiff, and not an affirmative defense to be pleaded by the defendant; and where the plaintiff suffered no unfair surprise. [24-25]

This court concluded that a condominium unit owners' association may recover damages in tort from a builder-vendor for negligent design or construction of common area property in circumstances in which damages are reasonably determinable, in which the association would otherwise lack a remedy, and in which the association acts within the time allowed by the applicable statute of limitations or statute of repose. [25-30]

In a civil action brought in Superior Court arising from the plaintiff condominium trustees' claim against the defendant developer for negligent design and construction, the judge did not err in reducing the award of repair and replacement costs by twenty percent by substitution of earlier-time repair and replacement costs for the later real-time or actual repair and replacement costs, where such an award fell within the range of reasonable alternative calculations. [30-31]

CIVIL ACTION commenced in the Superior Court Department on December 8, 2005.

The case was heard by *Paul A. Chernoff,* J.

[1] Frank Thoms and Vincent Cascio.

[2] Of the Market Gallery Condominium Trust.

*Thomas O. Moriarty* for the plaintiffs.

*Thomas H. Hayman* (*Patrick T. Uiterwyk* with him) for the defendant.

SIKORA, J. At the conclusion of an eleven-day jury-waived trial, a judge of the Superior Court awarded compensatory damages of $140,000 to the plaintiffs as trustees of the Market Gallery Condominium Trust (Market Gallery or the trustees), as the remedy for negligent construction of elements of a condominium building by the defendant, Ayer Properties, LLC (Ayer). Market Gallery appeals upon the grounds that the judge misapplied the economic loss rule so as to exclude certain damages and that he improperly reduced the measure of the established damages. Ayer cross-appeals; it argues that the economic loss rule should preclude all claimed damages.

*Background.* 1. *Construction.* In 2002, Ayer purchased a vacant mill building located on Market Street in Lowell. The four-story brick building originated in 1858; it held the status of a protected structure within the city's downtown historic district. It had been vacant for at least ten years before Ayer's purchase.

Ayer began conversion of the building to residential and commercial units in 2003 and continued the work for a period of almost three years. It executed the master deed establishing the condominium trust in December of 2003, at the time of the first sale of a residential unit. Ayer became the original declarant and sole trustee of the condominium trust at that point. In August of 2004, as the conversion continued, Ayer gave way to trustees comprised of unit purchasers.[3] Ayer retained ownership of the five commercial units on the first floor of the building. The sale and occupancy of the twenty-two residential units proceeded as each reached completion during the three-year construction period. The residential units occupied the second, third, and fourth floors.

Soon after the transfer of control, the trustees became concerned about the condition of building. They hired a professional engineer to perform a condition survey and to prepare a

---

[3]On August 2, 2004, Brian Wyman, Frank Thoms, and Vincent Cascio signed an "Acceptance of Trustee" document, which transferred control of the common areas from Ayer to them as trustees. At that time, each owned a residential unit in the building.

study based on his investigation. Ayer retained an architect and engineer to comment on Market Gallery's study and to perform his own survey of the property. Three categories of common area damage emerged: (1) twenty-two window frames were suffering excessive weather damage and leakage extending beyond the common area and into the window bodies, sashes, and panes inside individual units; they required repair or replacement; (2) the exterior brick masonry facade was deteriorating; and (3) the roof was absorbing water and permitting leakage and consequent damage to insulation under the roof and to four residential units.

2. *Litigation.* The Market Gallery trustees began suit in December of 2005. They pursued four causes of action to trial: (1) negligent design and construction of common areas; (2) breach of fiduciary duty by Ayer to deliver common areas free of defects; (3) breach of an implied warranty to deliver common areas of competent workmanship and material; and (4) unfair or deceptive conduct in violation of G. L. c. 93A, § 2, for delivery of common areas noncompliant with existing statutes and regulations designed to protect public health, safety, or welfare. At the conclusion of trial, the judge ruled (1) that Massachusetts did not recognize the claim of a fiduciary duty owed by a condominium developer to the eventual unit owners' trust association; (2) that an implied warranty of habitability did not apply to the conversion and renovation of an existing structure; and (3) that Market Gallery had failed to show that any c. 93A misconduct had caused the property damage at issue. By these determinations, the judge effectively reduced the case to Market Gallery's claim of negligence and Ayer's defense of the economic loss rule.[4]

In a meticulous and detailed memorandum of decision, the judge assessed $34,000 as compensatory damages resulting from negligent design and construction of the window frames, and $106,000 as damages for losses resulting from negligent construction of the roof (incomplete attachment of a protective

---

[4]Market Gallery does not appeal from the rejection of its fiduciary, warranty, and G. L. c. 93A theories of recovery. No contract existed between Ayer, as developer, and Market Gallery, as the eventual unit owners' association, and thus no claim for breach of contract arose.

subsurface membrane). He found that the common area defects in the window frames and roof had caused additional harm within individual units, i.e., deterioration of sashes and seepage as well as staining through ceilings and walls. By contrast, he found that the defects of the exterior masonry (repaired at a cost of $80,000) did not extend to any harm beyond the masonry itself. The judge's net awards of $34,000 and $106,000 resulted from a reduction of twenty percent from the actual repair and replacement costs determined by him from the data submitted by the trustees. The judge chose to employ the estimated cost of repair and replacement at the time of the negligent construction rather than at the subsequent time of actual expenditure by Market Gallery.[5]

On appeal Market Gallery argues specifically (1) that Ayer failed to plead, and thereby waived, the economic loss rule as an affirmative defense; (2) that the judge improperly employed that rule to exclude recovery for the masonry damages; and (3) that he wrongly reduced the roof-related and the window-related damages by twenty percent by substitution of the earlier-time replacement costs for the subsequent real-time repair costs.

By cross appeal, Ayer argues that the condominium structure constitutes an integrated product; that no damages extended beyond that product; and that therefore the economic loss rule categorically precludes any damages.

*Analysis.* 1. *Pleading the economic loss rule.* Market Gallery insists that Ayer had a duty to plead the rule as an affirmative defense and that its first assertion of it by motion for a directed verdict constituted waiver. For two reasons, one doctrinal and one equitable, we cannot agree.

The economic loss rule establishes limitations on damages which a plaintiff must plead and may recover in a negligence action. See *Berish* v. *Bornstein*, 437 Mass. 252, 267-268 (2002) (*Berish*) ("Here, we examine the complaint to determine whether the motion judge properly applied the economic loss doctrine to the negligence claims, and if so, whether the complaint, liberally construed, alleged any damages that are not barred by that doctrine"). The rule implicitly places the burden on the plaintiff

---

[5]In accordance with G. L. c. 231, § 6B, the judge added simple annual interest of twelve percent upon these damages in tort.

to prove that its property damage resulted proximately from the negligent conduct of the defendant. See *Marcil* v. *John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 629-630 (1980) (directed verdicts proper on negligence counts because of plaintiff's failure to prove any personal injury or property damages beyond pure economic loss). Compare *Aldrich* v. *ADD Inc.*, 437 Mass. 213, 222 (2002) (holding that, because the plaintiff's pleadings alleged sufficient physical property damage to the common areas of a condominium, the economic loss rule was not a bar to a cause of action for negligence). Physical injury or property damage beyond pure economic loss and beyond damage to the product itself is an element of damages to be proved by the plaintiff, and not an affirmative defense to be pleaded by the defendant.

In addition, as an accommodation to Market Gallery's contention, the trial judge permitted the trustees to reopen the case to introduce additional evidence of damages not precluded by the rule. Market Gallery therefore suffered no unfair surprise from the absence of the pleading of the rule as an affirmative defense in Ayer's answer.

2. *Economic loss rule.* In accord with the majority of jurisdictions that have addressed the issue, Massachusetts has long adhered to the rule that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp.* v. *Boston Edison Co.*, 415 Mass. 393, 395 (1993), and cases cited. *Aldrich* v. *ADD Inc., supra* at 222. *Marcil* v. *John Deere Indus. Equip. Co., supra* at 631. *R.L. Whipple Co.* v. *Pondview Excavation Corp.*, 71 Mass. App. Ct. 871, 873 (2008). See *East River S.S. Corp.* v. *Transamerica Delaval Inc.*, 476 U.S. 858, 868-875 (1986) (analyzing and importing the rule into the measurement of negligence damages in admiralty). See also *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co.*, 404 Mass. 103, 107, 109 (1989). Economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." *Marcil* v. *John Deere Indus. Equip. Co., supra* at 630 n.3, quoting from *Alfred N. Koplin & Co.* v. *Chrysler Corp.*, 49 Ill. App. 3d 194, 199 (1977).

The rule applies not only to the purchase and sale of products but also to claims of negligence against a "builder of houses or other realty structures." *McDonough* v. *Whalen,* 365 Mass. 506, 511 (1974) ("there is no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels"). In *Aldrich* v. *ADD Inc., supra* at 223, the Supreme Judicial Court expressly approved the application of the economic loss rule to causes of action for negligence arising from condominium construction. See *Berish,* 437 Mass. at 267-268 (addressing application of the economic loss rule to a condominium builder).

A component of the rule is that injury or damage must occur to person or property beyond the defective product or structure itself. See *McDonough* v. *Whalen, supra* at 513; *Berish, supra* at 268. Recovery for harm to the product or structure itself, without more, falls within the remedial range of contract and warranty law and not within the more uncertain range of reasonable foreseeability governing tortious negligence damages. See, e.g., *Bay State-Spray & Provincetown S.S., Inc.* v. *Caterpillar Tractor Co., supra.*

a. *Windows and roof claims.* In this instance, the judge viewed the converted building as two separate properties or products: the common areas and the privately owned individual units. He reasoned that the defects of the common area exterior window frames had caused damage to the interior privately owned window sashes; and that the common area roof leakage had caused damage to four individual units and other space below the roof. Those consequential physical damages to separate property satisfied the requirement of the rule for a concomitant harm beyond the damage to the original product or structure furnished by the defendant. The judge did not trace any harm from the masonry facade to the individual units. That absence left the Market Gallery trustees without harm to a separate property interest and without the consequential loss usually required by the rule, and therefore without a remedy for the masonry loss.

Ayer insists that the rule prohibits all damages because the converted condominium structure constitutes a single integrated product and the evidence shows harm to no property interest other than that product. The judge acknowledged that the

Supreme Judicial Court has not squarely resolved the application of the integrated product concept to condominium properties.[6] See *Berish, supra* at 266-268. The judge buttressed his characterization of the condominium structure as two separate property interests susceptible to two separate harms with additional reasoning: (1) he interpreted the court's treatment of the rule in *Berish* as an "implied rejection" of its application to condominium common area damage; and (2) he concluded that operation of the rule here would leave the condominium trust remediless because no contract existed as a source of breach damages and because the trustees' alternative claims (breach of fiduciary duties, of an implied warranty of habitability, and c. 93A standards) were inapplicable. We agree.

First, as a matter of authority, the precise question does remain open. The closest dicta of the Supreme Judicial Court lean against the unqualified application of the rule to defectively designed or constructed condominium common areas. In *Aldrich* v. *ADD Inc.*, 437 Mass. at 222-223, the court affirmed the denial of summary judgment to a defendant architectural firm with the following language.

> "The [condominium trustees'] pleadings and affidavits allege physical property damage sufficient to state a cause of action for negligence against the architect. . . . The negligence alleged by the plaintiffs caused physical harm to the common areas of the condominium necessitating the expenditure of substantial sums of money to repair the damage. Accordingly, summary judgment could not enter in the architect's favor on the ground that the plaintiffs' claim was barred by the economic loss rule."

In *Berish, supra* at 268, a similar passage permitted the condominium common area damage claims to survive a motion to dismiss for failure to state a claim. The court stated:

> "Accepting these allegations [of multiple structural flaws in both the common and private areas] as true, it is reasonable to infer that the enumerated 'defects and deficiencies' caused property damage beyond the defects in the

---

[6]Ayer makes the same observation in its brief.

condominium units themselves, and, therefore, that the trustees could have demonstrated that they were entitled to relief on their negligence claims."

Second, we agree that the rule does not require a court to leave a wronged claimant with no remedy. Typically it denies the right and remedy of negligence damages and diverts liability and damages to available alternative theories of contract or warranty. The judge, quoting from *Fine* v. *Huygens, DiMella, Shaffer & Assocs.*, 57 Mass. App. Ct. 397, 400 (2003), observed that " 'contractual remedies [may] still be pursued' where breach of implied warranty is unavailable because [the] alleged harm is 'economic' loss of value in the product itself." See *East River S.S. Corp.* v. *Transamerica Delaval Inc.*, *supra* at 868-875 (explaining the use of the rule to furnish a more definite measure of damages for defective products [and structures] by concepts of contract and warranty in place of the indefinite measure accompanying claims of negligent conduct). Condominium association trustees will typically lack such alternative remedies. They do not "buy" the common areas from the developer. See *Berish*, *supra* at 266 n.28. The absence of the discrete "sale" of the common areas leaves the association without the accompanying remedies of contract and warranty.[7] The fundamental purpose of the rule is to confine the indeterminacy of damages, not to nullify a right and remedy for a demonstrated wrong and its harm.[8]

Finally, an overly mechanical application of the rule would

---

[7]Rather, the trustees assume control over the common areas as they gradually and separately purchase individual units and form the membership of the unit owners' association as successor to the builder-vendor or entities controlled by the builder-vendor. See G. L. c. 183A, § 10(*m*), as inserted by St. 1992, c. 400, § 14, (referring to transfer of control "from the declarant [builder-vendor] to the organization of unit owners"). See, e.g., *Berish*, *supra* at 254-256.

[8]See 4 Harper, James, & Gray, Torts § 25.18A, at 775-776 (3d ed. 2007):

"But judges who have been unwilling to accept narrow and unrealistic views of what is foreseeable — or of what a jury may find to be unforeseeable — remain generally unwilling to allow recovery for indirect economic loss. The explanation for this reluctance, repeated in decisions over the years, is a pragmatic one: The physical consequences of negligence usually have been limited, but the indirect economic repercussions of negligence may be far wider, indeed virtually open-ended. As

diverge from its purpose. The rule serves as a barrier against indeterminate and therefore potentially excessive consequential damages. It applies especially forcefully to intangible, and therefore more disputable and less measurable, interests such as lost profits and diminished good will.[9] That danger is absent from this case. A lengthy trial has established fault, proximate cause, harm to property, reliably specific damages, and the absence of any alternative remedy. The rule and the mechanics of its corollaries — including the integrated product concept and the requirement of harm to "other property" — play no practical role in the just determination of liability and damages by fundamental concepts of tort.

b. *Masonry claim.* The judge did not find liability and did not assess damages from the masonry claim because the deterioration of that common area property element did not cause further harm to individually owned units as "other property." The judge conscientiously applied the mechanics of the rule to the masonry claim. However, the strength of his reasoning upon the windows and roof claims would rationally extend to the masonry dispute as well. In the present circumstances, liability should not hinge on the fortuity of secondary harm (such as damage to an interior unit), however minor, to a separate property. No Massachusetts authority prohibits compensatory damages for a negligently designed or constructed condominium common area such as the masonry surface. No alternative remedy is available.

---

Cardozo put it in a passage often quoted [from *Ultramares Corp.* v. *Touche*, 255 N.Y. 170, 179 (1931)], liability for these consequences would be 'liability in an indeterminate amount for an indeterminate time to an indeterminate class' " (footnotes omitted).

[9]A straightforward illustration of the rule and of its purpose appears in the early case of *Karl's Shoe Stores, Ltd.* v. *United Shoe Mach. Corp.*, 145 F. Supp. 376, 377-378 (D. Mass. 1956), cited in *Marcil* v. *John Deere Indus. Equip. Co., supra* at 631. In *Karl's Shoe Stores,* a retailer sued the manufacturer of an adhesive used to attach the soles of shoes to their upper structures. The retailer alleged that the negligently manufactured adhesive failed to hold the soles on shoes purchased and sold by the retailer and that, as a result, it had lost business revenue and good will. The court concluded that the complaint failed to state a claim upon which relief could be granted because it alleged harm and damages "to a remote purchaser of its product of loss of business, revenue, or good will resulting from negligence on the part of the manufacturer in the making of its product." *Id.* at 377.

Most fundamentally, no danger of speculative, exorbitant damages is apparent. A thorough adjudication of fault, causation, harm, and measurable damages has proceeded to completion. The award of those damages does not violate the policy of the rule against exposure of the developer to indeterminate consequences.

We therefore hold that a condominium unit owners' association may recover damages in tort from a responsible builder-vendor for negligent design or construction of common area property in circumstances in which damages are reasonably determinable, in which the association would otherwise lack a remedy, and in which the association acts within the time allowed by the applicable statute of limitations or statute of repose. We reverse the dismissal of the claim for damage to the masonry and order the entry judgment in favor of Market Gallery in the amount of $64,000 for that loss.[10]

3. *Damages computation.* Finally, Market Gallery argues that the judge incorrectly reduced the replacement and repair costs figures by twenty percent by substitution of earlier-time repair-and-replacement costs for the later real-time or actual repair-and-replacement costs. That adjustment was permissible.

At least two recognized measurements were available to the judge: (i) diminution in market value or (ii) prior replacement or restoration costs. See *Commonwealth* v. *Johnson Insulation*, 425 Mass. 650, 665-666 (1997), citing *Trinity Church* v. *John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 49-50 (1987). See also *Belkus* v. *Brockton*, 282 Mass. 285, 288 (1933) (where injury is easily curable by repairs, expense of repairs is measure of recovery); Restatement (Second) of Torts § 929(1)(a) (1979) (damages for harm to land include compensation for difference in value before and after the harm, or reasonable cost of restoration). If the court chooses to employ the method of prior replacement cost, "a test of reasonableness" applies. *Trinity Church* v. *John Hancock Mut. Life Ins. Co.*, *supra* at 50. A

---

[10]After consideration of the variant estimates of the necessary costs of repairs, the judge concluded, "If damages could be assessed on this part of the negligence action, they would amount to $80,000." We apply the judge's twenty percent reduction to reach the net figure of $64,000. The prejudgment rate of interest pursuant to G. L. c. 231, § 6B, will apply to that amount.

judge must pass outside the range of reasonable alternatives to warrant reversal.

The judge systematically addressed each claim of the windows, roof, and masonry damages, and computed the cost of replacement or repair for each component. He imposed the twenty percent reduction to allow for the increase in cost since the occurrence of the damage. See *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 348 (1984) ("damages accrue at the time of the tortious injury"). His award of the earlier replacement costs fell within the range of reasonable alternative calculations.

*Conclusion.* We affirm the judgment in favor of the plaintiff, Market Gallery Trust, upon the claims for compensatory damages for harm to common area windows and roof areas. We reverse the order of dismissal of Market Gallery's claim for compensatory damages for harm to common area masonry and order the entry of judgment in favor of Market Gallery in the sum of $64,000 plus interest pursuant to G. L. c. 231, § 6B. The judgment is to be modified to include an additional award to the plaintiffs in the amount of $64,000 together with prejudgment interest from December 8, 2005 to September 30, 2010, on that amount. As so modified, the judgment is affirmed.

*So ordered.*