NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11474

BRYAN WYMAN & others,[1] trustees,[2] vs.  AYER PROPERTIES, LLC.


Middlesex.      March 4, 2014. - July 10, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.


Real Property, Condominium.  Condominiums, Common area.
    Negligence, Construction work, Economic loss.  Damages,
    Replacement or reconstruction of building, Repairs.



    Civil action commenced in the Superior Court Department on
December 8, 2005.

    The case was heard by Paul A. Chernoff, J.

    After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


    Thomas O. Moriarty (David M. Rogers with him) for the
plaintiffs.
    Thomas H. Hayman (Patrick T. Uiterwyk with him) for the
defendant.
    Henry A. Goodman, for Community Associations Institute,
amicus curiae, submitted a brief.

---

[1] Frank Thoms and Vincent Cascio.

[2] Of the Market Gallery Condominium Trust.

CORDY, J.  On December 8, 2005, Brian Wyman, Frank Thoms, and Vincent Cascio, as trustees of the Market Gallery Condominium Trust (trustees), filed a civil action against Ayer Properties, LLC (Ayer), seeking damages stemming from the negligent construction of elements of a condominium building by Ayer.  The trustees alleged that Ayer -- which had purchased and converted the building in question into condominiums -- had negligently constructed the window frames, the exterior brick masonry, and the roof of the building, resulting in damage to both the common areas of the building and individual residential units.[3]

After a jury-waived trial, a Superior Court judge found that Ayer was negligent in its construction of the window frames, masonry, and roof.  He awarded damages for Ayer's negligence as to the window frames and the roof, because their improper installation had resulted in damage to both the common areas and several individual units.  However, because he found that the damage resulting from the defective masonry work was limited to the masonry itself and did not cause or include damage to any individual units, the judge concluded that the

---

[3] The trustees of the Market Gallery Condominium Trust (trustee) sought damages only for the damage to the common areas and facilities of the building.

economic loss rule precluded the trustees from recovering for
Ayer's negligence as to that portion of the building.[4]

In determining the appropriate measure of damages, the
judge first calculated the cost to repair and replace the
damaged portions of the building,[5] and then reduced that amount
by twenty per cent to reflect what the costs would have been at
the time of the negligent construction rather than at the time
of the actual expenditures for repair and replacement.  As a
result, the judge awarded compensatory damages of $140,000 to
the trustees.  To this amount, the judge noted, would be added
simple annual interest of twelve per cent, in accordance with
G. L. c. 231, § 6B.[6]  The parties filed cross appeals.  In its
appeal, Ayer claimed, among other things, that the condominium
structure constituted an integrated product, and that where no

---

[4] The "economic loss rule" is also referred to as the
"economic loss doctrine."

[5] These costs included costs actually incurred to replace
the roof, and those estimated to be necessary for the removal
and replacement of the windows and frames.

[6] General Laws c. 231, § 6B, provides:

"In any action in which a verdict is rendered or a
finding made or an order for judgment made for pecuniary
damages for personal injuries to the plaintiff or for
consequential damages, or for damage to property, there
shall be added by the clerk of court to the amount of
damages interest thereon at the rate of twelve per cent per
annum from the date of commencement of the action even
though such interest brings the amount of the verdict or
finding beyond the maximum liability imposed by law."

damage extended beyond that product, the economic loss rule precluded any damages.

The Appeals Court affirmed the judgment in favor of the trustees on the claims for compensatory damages for harm to the common area window frames and to the roof areas, determining that application of the economic loss rule was not appropriate in this context. Wyman v. Ayer Props., LLC, 83 Mass. App. Ct. 21, 29, 31 (2012). It went on to note that the "closest dicta" of this court "lean against the unqualified application of the rule to defectively designed or constructed condominium common areas," id. at 27, citing Aldrich v. ADD Inc., 437 Mass. 213, 222-223 (2002). Based on this reasoning, the Appeals Court reversed the order of dismissal of the trustees' claim for damages for harm to the masonry, and awarded damages totaling $64,000 plus interest pursuant to G. L. c. 231, § 6B. Wyman, supra at 31.[7] It also determined that the judge's decision to reduce the damages by twenty per cent to reflect the earlier replacement costs "fell well within the range of reasonable alternative calculations." Id.

---

[7] In his findings, the Superior Court judge presciently computed the value of the damage to the masonry to avoid the necessity of a retrial "in the event that an appellate authority subsequently ruled that the [e]conomic [l]oss [d]octrine does not preclude an assessment of damages to the masonry." He assessed the cost to repair and replace the damaged masonry as $80,000, which, after a twenty per cent reduction, amounts to $64,000.

On further appellate review in this court, the trustees contend that the Appeals Court was correct and that the Superior Court judge misapplied the economic loss rule so as to exclude damages resulting from the defective masonry. They also argue that the judge erred in reducing the measure of the established damages by twenty per cent. Ayer, on cross appeal, continues to contend that the economic loss rule should preclude all claimed damages.

We are largely in agreement with the Appeals Court, and conclude that the economic loss rule is not applicable to the damage caused to the common areas of a condominium building as a result of the builder's negligence, and that recovery for damages resulting from the defective masonry should have been awarded to the trustees. Consequently, we affirm the judge's decision as to the window frames and roof, and remand to the Superior Court for entry of an order awarding additional damages for the negligently constructed masonry. We also reverse the judge's decision to reduce the repair and replacement damages by twenty per cent, and remand the case to the Superior Court for entry of judgment in the full amount of the damages established at trial.

1.  Background.  a.  The construction.  In 2002, Ayer[8] purchased a 150 year old vacant, four-story mill building located on Market Street in Lowell.  Ayer intended to serve as a general contractor for the renovation of the building, during which Ayer would convert the building into five commercial units and twenty-two luxury condominiums.  To that end, Ayer, as trustee, established the Market Gallery Condominium on December 16, 2003, and recorded the master deed on December 17, 2003, simultaneously with the sale of the first unit.

The renovation began in January, 2003, and the sale and occupancy of the twenty-two residential units proceeded as each unit was completed during the three-year construction period. On August 2, 2004, Ayer ceded control as trustee to the newly appointed board of trustees.[9]  The sale and occupancy of the residential units was completed in 2005.[10]

Shortly after the transfer of control, the trustees became concerned with the condition of the building, specifically the

---

[8] Ayer Properties, LLC (Ayer), is a single-purpose entity existing solely to acquire buildings, convert them into condominiums, and convey finished units.  It is a limited liability company managed by John J. DeAngelis.

[9] At the time of the judge's decision, the board of trustees consisted of Philippe Jeanjean, Stephen Greene, Alyssa Faulkner, Clint Baptiste, and Phillip Thompson.

[10] The residential units are located on the second, third, and fourth floors of the building.  The first level contains five commercial units, all of which are owned by Ayer.

windows, exterior masonry, and roof.  Out of that concern, they
hired a professional engineer to perform a condition survey.
The survey revealed damage to the window frames, exterior
masonry, and roof.[11]  As a result of the damage, the trustees
brought suit against Ayer in December, 2005, alleging, in
relevant part, negligent design and construction of the common
areas of the building.[12]

    b.  The trial judge's findings and decision.  The judge
first found that Ayer's negligent design and construction of the
common-area window frames was responsible for severe weather-
related deterioration to twenty-two frames, which in turn caused
damage to both the common areas and several individual units.
He calculated the cost to "remove a storm window, remove and
replace the frame elements, remove and replace a window, and

_____

    [11] The initial survey was performed by Timothy Little, a
professional engineer, who found damage to the windows and
masonry but did not inspect the roof.  Little returned to the
site for a more detailed inspection in 2008, which is presumably
when he discovered the damage to the roof, although the record
is not clear on this point.

    [12] The trustees initially alleged five causes of action:
(1) negligent design and construction of common areas; (2)
breach of fiduciary duty by Ayer to deliver a common area free
of defects; (3) breach of an implied warranty to deliver
competent workmanship and material; (4) breach of fiduciary duty
by Ayer to exercise good faith, loyalty, and due diligence; and
(5) unfair or deceptive conduct in violation of G. L. c. 93A,
§ 2, for failing to comply with statutes and regulations
intended to protect public health, safety, or welfare.  At the
conclusion of trial, the judge ruled for Ayer on counts two,
three, and five, and dismissed count four on the request of the
trustees.  The trustees do not appeal those decisions.

dispose of the refuse at $1,500 per window," and the cost to replace the sills, a process which includes the "removal of storm windows and disposal of refuse," at $500 per window, amounting to a total cost of repair of $44,000. He opted to reduce the costs by twenty per cent, "to reflect costs at the time the damage was incurred." He added that the "[twenty per cent] reduction in replacement costs seems especially appropriate where the [twelve per cent] interest on the judgment will amount to approximately [sixty per cent]." Thus, the assessable damages awarded for the windows were set at $34,000.

The judge also found that the common-area roof was badly damaged as a result of the incomplete attachment of a protective subsurface membrane. As a result of the damage, the roof allowed water to leak into common areas, as well as several residential units, during heavy rainstorms, causing stains on several walls and ceilings. The judge noted that, in September, 2009, the trustees contracted with L.E. Morgan Construction Company to completely replace the building's roof for $132,240. Finding that cost attributable to Ayer, the judge again reduced those damages by approximately twenty per cent, and awarded $106,000 to the trustees for damage to the roof.

Regarding the exterior masonry, the judge found that the brick facade to the common area had significantly deteriorated due a lack of diligence that was "chargeable to Ayer." He

assessed the cost to repair at $80,000.  However, the judge held that where the defects to the exterior masonry did not cause any harm beyond the masonry itself, the economic loss rule barred the trustees' recovery in negligence, and he thus awarded no damages for the negligently constructed masonry.[13]

2.  Discussion.  a.  Economic loss rule.  This court has long stood with the majority of jurisdictions in embracing the economic loss rule.  See, e.g., Bay-State Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989) (Bay-State Spray).  The rule establishes limitations on damages a plaintiff may plead and recover in a negligence action.  It ensures that, "[i]n the absence of personal injury or physical damage to property [beyond the defective product itself], the negligent supplier of a defective product is not ordinarily liable in tort for simple economic loss."  Berish v. Bornstein, 437 Mass. 252, 267 (2002).  See FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993) ("purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage").  "Economic loss

---

[13] Ayer did not plead the economic loss rule as an affirmative defense, and instead raised the issue in a motion for directed verdict at the close of evidence, after which the judge reopened the evidence to take evidence on the applicability of the rule.  While the trustees argued in their initial appeal that Ayer waived its argument that the economic loss rule should apply, the Appeals Court rejected its contention, and the trustees do not argue waiver here.  See Wyman v. Ayer Props., LLC, 83 Mass. App. Ct. 21, 24-25 (2012).

includes 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.'"  Berish, supra, quoting Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 630 n.3 (1980).  Essentially, where the negligent design or construction of a product leads to damage only to the product itself, the recovery for economic loss is in contract, and the economic loss rule bars recovery in tort.

We have said that "[t]he economic loss doctrine applies not only to the purchase and sale of products but also to claims of negligent design and installation in a newly constructed home." Berish, 437 Mass. at 267.  See McDonough v. Whalen, 365 Mass. 506, 514 (1974) (doctrine did not apply where negligently designed septic system overflowed causing damage to other property).  We have not, however, had occasion to consider whether the economic loss rule applies to damage caused by negligent design and construction of the common areas of a condominium building, whether or not such negligence caused damage to other property.  As the issue is now squarely before us, we hold that the economic loss rule does not ordinarily apply in such circumstances.

An examination of the purpose of the economic loss rule guides our decision.  The rule was developed in part to prevent

the progression of tort concepts from undermining contract expectations.  See East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 866 (1986).  The rationale for excluding tort recovery for economic loss is that, "[w]hen a product injures only itself," a party should be left to its contractual remedies.  Bay-State Spray, 404 Mass. at 109, quoting East River S.S. Corp., supra at 871.  "The commercial user can protect himself by seeking express contractual assurances concerning the product (and thereby perhaps paying more for the product) or by obtaining insurance against losses." Bay-State Spray, supra at 109-110.  See Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 89 (D. Mass. 1998), quoting East River S.S. Corp., supra at 872 ("The rationale underlying the economic loss doctrine is that damage to a product itself 'means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'  The maintenance of product value and quality is precisely the purpose of express and implied warranties").  As a result, "[w]hen a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."  Bay-State Spray, supra at 109, quoting East River S.S. Corp., supra at 871.

The nature of condominium unit ownership supports our conclusion that claims such as those raised here do not fit into

the rubric of claims intended to be covered by the rule. "Ownership of a condominium unit is a hybrid form of interest in real estate, entitling the owner to both 'exclusive ownership and possession of his unit, G. L. c. 183A, § 4, and . . . an undivided interest . . . in the common areas." Berish, 437 Mass. at 262, quoting Noble v. Murphy, 34 Mass. App. Ct. 452, 455-456 (1993). As part of the statutory structure of condominium ownership, "condominium unit owners cede the management and control of the common areas to the organization of unit owners, which is the only party that may bring litigation relating to the common areas of the condominium development on their behalf." Berish, supra at 263, citing G. L. c. 183A, § 10 (b) (4). See Cigal v. Leader Dev. Corp., 408 Mass. 212, 217 (1990) (G. L. c. 183A, § 10, "plainly contemplates that the association is to act as the exclusive representative of the unit owners in litigation for negligent construction").

The problem arises where the party exclusively responsible for bringing litigation on behalf of the unit owners for the negligent construction of the common areas (here, the trustees) has no contract with the builder under which it can recover its costs of repair and replacement, that is, its economic losses caused by defective construction. We agree with the Appeals Court that "the rule does not require a court to leave a wronged

claimant with no remedy," <u>Wyman</u> v. <u>Ayer Props., LLC</u>, 83 Mass.
App. Ct. at 28, and that "[t]he fundamental purpose of the rule
is to confine the indeterminacy of damages, not to nullify a
right and remedy for a demonstrated wrong and its harm."[14]  <u>Id</u>.

The rationale for applying the rule is made even weaker
where the trustees seek damages that are finite and foreseeable.
The rule is intended to preclude recovery for intangible and
unknown damages for lost contract or economic opportunity.  See
<u>FMR Corp</u>., 415 Mass. at 394-395 (economic loss doctrine
precluded recovery for lost income and increased costs of doing

---

[14] While the trustees do not have a contract with Ayer, the
individual unit owners who purchased their units from Ayer do,
and, as such, depending on the terms of each contract, they
might each bring an action for breach of contract against Ayer
for damage to their units and to their interest in the common
areas stemming from negligent construction.  See <u>Cigal</u> v. <u>Leader
Dev. Corp</u>., 408 Mass. 212, 215 (1990) ("Nothing in G. L. c. 183A
divests the purchaser of a condominium of the right to sue in
breach of contract").  See also <u>Gordon</u> v. <u>State Bldg. Code
Appeals Bd</u>., 70 Mass. App. Ct. 12, 20 (2007) (although
association has exclusive right to protect owners' common
rights, individual owners may assert claims "relating to their
individual rights even though such claims may arise from
something that takes place in a common area").  Were we to
determine that the economic loss rule precluded the trustees'
suit, we would force each individual unit owner to sue Ayer for
breach of contract, even though the harm complained of stemmed
from common structural problems.  Such a result is precisely the
sort of "[p]iecemeal litigation by individual unit owners [that]
would frustrate the statutory scheme, in which the association
acts as the representative of all owners in common." <u>Cigal</u>,
<u>supra</u> at 218.  Simply put, where contractual remedies for the
individual unit owners are not easily enforceable, and actions
brought by such individuals would be inconsistent with judicial
economy and with the role delegated to the condominium
association by statute with regard to common areas, the
rationale for applying the economic loss rule is weak.

business due to three-day power outage resulting from defendant's negligence). See also Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 304-305 (1993) (plaintiff's claim "thwarted by the economic damage rule" where malfunctioning measuring device installed by defendant resulted in oil spill at plaintiff's station, and alleged damages resulted in part from 157-day delay in plaintiff's ability to complete contracted work with third party); Marcil, 9 Mass. App. Ct. at 630 (plaintiff suffered unrecoverable economic losses where he alleged that defendant's negligently manufactured tractor caused him "severe losses in his business and good will"). Here, there is no such danger. An eleven-day trial established Ayer's fault, the harm suffered by the trustees as representative of the unit owners' rights in the common areas, and the exact amount of the damages. There is no allegation of consequential damages, but simply a reliably proven amount needed to repair or replace the negligently constructed window frames, masonry, and roof. Thus, the purposes of the economic loss rule have little applicability in these circumstances.

b. Damages calculation. The trustees argue that the judge incorrectly reduced the damages by twenty per cent in an attempt to reflect the costs of repair and replacement at the time of the negligent construction. They contend that the proper award of damages is the actual and projected repair and replacement

costs as found by the trial judge, without any reductions.  We agree.

A basic premise of tort law is that "[t]he plaintiff is entitled to that sum of money which will place him in the position in which he was immediately before the defendant's negligent act or omission."  J.R. Nolan & L.J. Sartorio, Tort Law § 13.1 (3d ed. 2005).  The general rule for determining property damage is diminution in market value.  See Hopkins v. American Pneumatic Serv. Co., 194 Mass. 582, 583 (1907).  However, "[r]eplacement or restoration costs have also been allowed as a measure of damages in other contexts where diminution in market value is unavailable or unsatisfactory as a measure of damages."  Trinity Church in the City of Boston v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 49 (1987).  "Where expenditures to restore or to replace to predamage condition are used as the measure of damages, a test of reasonableness is imposed."  Id. at 50.  Both the cost of repair or replacement and the repair or replacement itself must be reasonably necessary in light of the damage inflicted by Ayer's negligence.  Id.  "[A]n award of damages must stand unless to make it or permit it to stand was an abuse of discretion on the part of the court below, amounting to an error of law."  Mirageas v. Massachusetts Bay Transp. Auth., 391 Mass. 815, 822 (1984), quoting Bartley v. Phillips, 317 Mass. 35, 43 (1944).

While we have held that repair and replacement costs are an appropriate measure of damages, we have not explicitly addressed whether or when it is proper for those damages to be reduced to account for the lower costs of repair and replacement that would have been incurred had they been done closer in time to the negligent construction. The cases cited by the Appeals Court in affirming the trial judge's reduced award stand only for the proposition that repair and replacement damages are appropriate. See, e.g., Commonwealth v. Johnson Insulation, 425 Mass. 650, 665-666 (1997); Belkus v. Brockton, 282 Mass. 285, 288 (1933). We need not now decide whether such a reduction is ever appropriate, where the judge's decision to reduce the damages by twenty per cent here was not reasonable.

It is not clear from the record why the judge concluded that the actual costs of repair and replacement that he found had already been incurred or were likely to be incurred were an unreasonable remedy. At the time the damages were awarded, the trustees had already contracted for the roof repair at a cost of $132,240. Absent any finding that this cost was excessive, we discern no basis to conclude that the trustees should not be entitled to the costs they had already incurred. Similarly, while work apparently remains to be done on the window frames and masonry, there is no finding that the costs of their repair and replacement, as determined by the judge, were unreasonable.

While the judge was in the best position to determine the proper amount of actual damages, and wrote a meticulously detailed, fifty-five page memorandum of decision in which he carefully explained his method of determining damages, his subsequent twenty per cent reduction is largely unexplained and unsupported by any evidence.

The only explanation of the reduction is alluded to in the judge's statements that the reduction with regard to the windows seemed "especially appropriate" given the addition of interest, and that the reduction with regard to the roof was reasonable "based on the evidence and the fact that damages will be enhanced by interest on the near [sixty per cent] interest on the judgment." Thus, it appears that the judge's decision to reduce the amount of damages was motivated, in significant part, by a desire to prevent the trustees from receiving the full benefit of the statutorily mandated interest. We agree with the trustees that the awarding of interest "is not within the purview of the fact finder," and conclude that reducing damages for the purpose of preventing aggrieved plaintiffs from receiving interest that the Legislature intended they receive is unreasonable (citation omitted). Lawrence Sav. Bank v. Levenson, 59 Mass. App. Ct. 699, 711 (2003) ("Prejudgment interest, awarded pursuant to G. L. c. 231, § 6B, is designed to

compensate a damaged party for the loss of use or the unlawful detention of money" [citation omitted]).

3. <u>Conclusion</u>.  We affirm the trial judge's decision awarding damages for negligent construction of the roof and window frames, and reverse his decision with regard to the damaged masonry.  We also vacate the award of damages and remand to the Superior Court for entry of an award of the full amount of damages found by the trial judge, amounting to $256,240, plus interest pursuant to G. L. c. 231, § 6B.

<u>So ordered</u>.