NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-14

IRENE TABACHNIK & another[1]

vs.

CT INSTALL AMERICA, LLC[2]; FRANCIS M. PANACHELLI & another,[3] third-party defendants.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In March 2018, the plaintiffs, Irene and Paul Tabachnik, hired the defendant, CT Install America, LLC (CT Install), to install new windows and sliding glass doors in their home. The project did not go well. Six months later, in September 2018, the Tabachniks filed this lawsuit alleging breach of contract, negligence, and violations of G. L. c. 93A. CT Install then brought a third-party complaint for, among other things, indemnification and contribution, against the subcontractor, Gerald Nolette, who CT Install had hired to do the work at the

---

[1] Paul Tabachnik.
[2] Doing business as Install America.
[3] Jerry Nolette doing business as Nolette Construction. As is our custom, we use the spelling that appears on the complaint.

Tabachniks' house.[4]  Following a jury-waived trial, a Superior Court judge found in favor of the Tabachniks on all their claims, and in favor of Nolette on CT Install's third-party claims.  CT Install appeals.

Background.  We recite the facts, taken from the evidence at trial, as follows.  The Tabachniks purchased their home in 2016.  The house was built in the 1950s and the Tabachniks planned to renovate the house in stages.  To this end, on March 3, 2018, the Tabachniks entered into a contract with CT Install for the purchase and installation of new windows and patio doors.  The cost of the project was $16,000.  The Tabachniks paid a deposit of $5,000, with the remainder due on completion of the work.  With respect to the Tabachniks' den, the plan was for CT Install to replace the existing windows with longer windows.  Although the Tabachniks believed that employees of CT Install would perform the work, CT Install hired Nolette, a local contractor, for the project.  Soon after the project began, the Tabachniks learned that the den wall was slanted due to preexisting structural issues, and consequently, the new windows could not be properly installed.

---

[4] CT Install also brought counterclaims against the Tabachniks and additional third-party claims against Francis M. Panachelli, another subcontractor that had measured the windows.  These claims have been dismissed, and no issues are raised as to them on appeal.

2

On May 23, 2018, Irene Tabachnik contacted CT Install, expressed her concern that the longer windows would not be appropriate due to the slant, and suggested that they instead replace the windows with ones that would fit the current openings. A representative from CT Install came out to the Tabachniks' home and told Irene that CT Install could fix the slant in the den wall and install the longer windows. The Tabachniks agreed to proceed with the project, which now included the additional work of fixing the den wall and the removal of a stone floor in the den.

After improperly installing some windows, which were not the same ones as the Tabachniks had originally ordered,[5] and having subcontractors begin demolition work to fix the slant, which ultimately also involved the Tabachniks paying Nolette an additional $2,000 to demolish the den floor they wanted to keep, CT Install concluded that the structural issues were too extensive to fix and abandoned the project.[6]

---

[5] The contract called for the installation of new construction "677" windows. However, CT Install delivered a lesser grade of windows referred to as "177" windows.

[6] There were also problems with the building permits and workmanship. On August 22, 2018, the town's building inspector, Walter Avallone, conducted a site visit. He testified that he saw work that did not fall within the purview of the building permit for window replacement and that the windows that were installed were not done so properly. In addition, the windows did not have stickers on them, so Avallone could not verify whether they met the applicable energy code. As a result of his observations, Avallone rescinded the building permit. He

3

In September 2019, the Tabachniks hired a new contractor to fix the problems. They asserted that they had incurred damages in the following amounts: $50,000 paid to the new contractor; $15,000 to replace a beam that CT Install had removed during the demolition; the $5,000 deposit paid to CT Install; the $2,000 to demolish the den floor; another $1,100 to rebuild the den floor; and $2,750 for an architect.

The case proceeded to trial before a judge of the Superior Court on August 22, 2022. On the first day of trial, the parties filed a joint waiver of detailed findings of fact and rulings of law, and, at the conclusion of the trial, the parties submitted agreed on special questions for the judge to answer as the finder of fact. In response to those questions, the judge found that for each of the Tabachniks' claims, they suffered damages in the amount of $76,650. Specifically, with respect to the breach of contract claim, the judge answered "yes" to the following two questions: (1) "Did the parties orally amend the contract, Ex.1, to reframe the slanted wall in the den after the discovery of the slanted wall?;" and (2) "Are the damages incurred by the Plaintiffs to structurally repair the den, consequential damages which the Plaintiffs are entitled to?" The judge then doubled the damages after finding that the

---

testified that the "work was in violation of code. It was inferior. It wasn't workmanlike installed."

4

defendant's conduct was a willful or knowing violation of c. 93A.  An amended judgment entered for $153,300, plus attorney's fees, costs, and prejudgment interest.

Discussion.  a.  Breach of contract claim.  CT Install argues that the judge erred in finding that there was a valid oral modification of the parties' contract requiring CT Install to reframe the slanted wall because the modification was not supported by proper consideration.[7]  This argument ignores the $2,000 payment made by the Tabachniks to Nolette to demolish the den floor, which CT Install maintained had to be done in order to fix the wall, and the demolishment of the floor itself, which the Tabachniks wanted to keep.  Thus, while it is true, as CT Install states, that the Tabachniks were not required to pay additional money to CT Install to fix the den wall, the oral modification was supported by adequate -- valuable -- consideration.  See A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 479 Mass. 419, 433 (2018).

b.  Negligence claim.  CT Install next argues that the Tabachniks' claim of negligence fails as a matter of law under

---

[7] Relying on Sharon v. Newton, 437 Mass. 99, 102 (2002), the Tabachniks argue that this argument is waived because CT Install did not specifically raise lack of consideration as an affirmative defense.  Given our conclusion that the oral modification was enforceable because it was supported by consideration, we need not address this argument.

the economic loss doctrine and for lack of causation.[8]  Neither argument provides a basis for reversing the judgment.

The economic loss doctrine (also known as the economic loss rule) "establishes limitations on damages a plaintiff may plead and recover in a negligence action.  It ensures that, '[i]n the absence of personal injury or physical damage to property [beyond the defective product itself], the negligent supplier of a defective product is not ordinarily liable in tort for simple economic loss.'"  Wyman v. Ayer Props., LLC, 469 Mass. 64, 69 (2014), quoting Berish v. Bornstein, 437 Mass. 252, 267 (2002).  "Essentially, where the negligent design or construction of a product leads to damage only to the product itself, the recovery for economic loss is in contract, and the economic loss rule bars recovery in tort."  Wyman, supra.  According to CT Install, the economic loss doctrine bars recovery here because "there was no evidence that . . . the installation of the windows performed by Install led to any property damage to the structure, required the rebuilding of the den or sunroom, or caused any other damage."  The flaw in this argument is that it ignores the

_____

[8] The Tabachniks argue that CT Install failed to plead, and thereby waived, the economic loss rule as an affirmative defense.  CT Install did not plead application of the rule as an affirmative defense but did raise it in connection with its motion for a directed verdict.  There was no objection, and therefore we do not deem the defense waived.  See Wyman v. Ayer Props., LLC, 469 Mass. 64, 69 n.13 (2014).

evidence establishing that the installation of improperly-sized windows was the reason for which the den wall needed repair and the floor had to be demolished.  In other words, there was physical damage to more than the product (the windows) itself. Accordingly, the doctrine does not bar recovery here.

CT Install's claim that there was no evidence of a causal connection between its actions and the injury at issue suffers from the same flaw described above; it ignores the evidence. Although it is undisputed that structural issues including a slant in the wall of the den existed before CT Install began the project, the evidence established that CT Install caused the harm complained of by attempting to install longer windows when it was evident that it was not feasible to do so and attempting to repair the slanted wall rather than reorder smaller windows that would fit the existing spaces, thereby causing some parts of the Tabachniks' home to be demolished.  Accordingly, the evidence fully supports the judge's conclusion that the additional repairs flowed directly from CT Install's negligence, and that negligence was the proximate cause of the damages at issue.  In sum, "but for" CT Install's negligence, the Tabachniks would not have been forced to repair the preexisting structural defects.

c.  Chapter 93A.  CT Install argues that the judge improperly found that its conduct violated c. 93A for two

reasons. First, CT Install claims that the parties' contract required the application of Pennsylvania law and, therefore, the Tabachniks cannot avail themselves of the protections c. 93A affords to consumers in Massachusetts. The judge properly rejected this argument, observing that despite the choice of law provision in the contract, the application of Pennsylvania law "would be contrary to a fundamental policy" of Massachusetts "which has a materially greater interest" in home renovations done in Massachusetts than does Pennsylvania. The judge further noted that an application of Pennsylvania law would unfairly deprive the Tabachniks of the protections of their home state's consumer protection laws and concluded that Massachusetts law applies in the circumstances of this case. We agree with the judge's analysis and conclusion in all respects. See generally Hodas v. Morin, 442 Mass. 544, 550 (2004).

Second, CT Install argues that even if Massachusetts law applies, there was no violation of c. 93A because, at best, all that occurred was a "mere" breach of contract. This argument also was properly rejected by the judge, who, in denying CT Install's motion for a directed verdict, noted that there was sufficient evidence of a violation of c. 93A, "particularly through violation of [G. L. c.] 142A," which addresses prohibited acts by contractors and subcontractors. See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 173-176

8

(2013).  Moreover, that the judge was not more specific regarding which provisions of c. 142A were violated is inconsequential given that CT Install waived its right to detailed findings of fact and rulings of law at the start of the trial.

Next, CT Install asserts that the judge had no basis for concluding that its conduct was willful or knowing and therefore the judge erred in doubling the damages.  In support of this argument, CT Install asserts there was no causal connection between the alleged unfair or deceptive acts or practices and the damages incurred in connection with fixing the preexisting structural issues.  Again, CT Install ignores evidence that demonstrates it acted willfully and knowingly when it installed windows that were not properly sized for the existing openings, violated the town's building code, and agreed to fix the slanted wall in the den and then abandoned the project.

Lastly, we turn to CT Install's argument that the attorney's fees awarded to the Tabachniks under c. 93A were excessive because the judge failed to reduce the amount of fees requested for legal work that was separate and apart from the c. 93A claim.  We review the judge's award of attorney's fees for an abuse of discretion.  See Castricone v. Mical, 74 Mass. App. Ct. 591, 603 (2009).

9

We acknowledge that the judge awarded the full amount of attorney's fees requested by the Tabachniks and did not make detailed findings indicating how and why he made the award.[9] However, in his order allowing the Tabachniks' motion for attorney's fees, the judge made clear that he had considered the nature of the case and the issues presented, and was guided by the "lodestar method" as set forth in Berman v. Linnane, 434 Mass. 301, 303 (2001), in reaching his conclusion that the amount of fees requested was "reasonable for the necessary services rendered . . . in preparation and presentation of this case." Furthermore, we agree with the Tabachniks that the c. 93A claim was intertwined with the breach of contract and negligence claims. When the "same primary conduct or chain of events" give rise to both the common law claims and the c. 93A claim, a trial judge "may treat the entire work as an indivisible contribution to the c. 93A accomplishment." Castricone, 74 Mass. App. Ct. at 604. Here, the judge, who was familiar with the case, was in the best position to determine whether any reductions in the fee award were necessary. His conclusion that no deductions were warranted was not an abuse of discretion.

---

[9] The judge did not award the full amount of costs that were requested.

10

d.  Calculation of damages.  CT Install correctly notes that there is a minor discrepancy in the calculation of damages. The $50,000 spent on the den, $15,000 to replace the beam, $5,000 deposit paid to CT Install, $2,000 to demolish the den floor, $1,100 to rebuild the den floor, and $2,750 for an architect equal $75,850, not $76,650 as the judge concluded. This amounts to a difference of $800.

Contrary to the Tabachniks' assertion that the defendant waived this issue, a mathematical error of this type is appropriately raised on appeal.  See EventMonitor, Inc. v. Leness, 473 Mass. 540, 552 (2016).  Because the uncontroverted evidence established damages in the amount of $75,850, which the judge then doubled pursuant to c. 93A, the defendant is entitled to the entry of a judgment in the amount of $151,700, to reflect the $1600 discrepancy.[10]

CT Install also claims that the award of damages should have been reduced by $11,000, which represents the balance owed on the original contract.  Given the circumstances of CT Install's breach, including the fact that the windows in the

---

[10] The Tabachniks maintain that $400 of the $800 is attributable to the cost of disposing of the windows that had been improperly installed before CT Install left the project.  However, the $400 was not included in the calculation of damages provided by the Tabachniks' attorney at trial.  As noted above, the amount specified was $75,850.

11

kitchen and the sliding glass door were never installed, we discern no basis for this claim.

We are similarly unpersuaded by CT Install's argument that the award of damages should be reduced by the amount the Tabachniks spent to fix the preexisting structural issues. As discussed previously, CT Install caused the harm by, among other things, their negligent assessment of the situation. Based on the evidence presented at trial, the judge had a proper basis for concluding that all the damages flowed from CT Install's conduct and that CT Install was therefore liable for all the expenses incurred to fix the structural issues.

e. CT Install's claim for indemnification. The final issue on appeal concerns CT Install's claim for indemnification. CT Install argues that the indemnification clause in its contract with Nolette is "unambiguous and clear" and the judge erred in finding that Nolette had no duty to indemnify it. This argument ignores the well-settled principle that when a subcontractor agrees to indemnify a general contractor, for the subcontractor to be liable, there must be a causal connection between the subcontractor's work and the injury. See M. Dematteo Constr. Co. v. A.C. Dellovade, Inc., 39 Mass. App. Ct. 1, 3 (1995). See also G. L. c. 149, § 29C, on which the judge relied in determining that the indemnity clause was not

12

enforceable.[11]  There was no evidence that Nolette caused the injury which led to this lawsuit.  To the contrary, based on the evidence presented at trial, which established that CT Install improperly measured the windows, delivered windows that were not the same ones the Tabachniks had intended to purchase, failed to obtain the necessary building permits, and told Nolette not to return to the jobsite, we discern no error in the verdict in favor of Nolette.

    f.  Appellate attorney's fees.  The Tabachniks have requested an award of their appellate attorney's fees.  They are entitled to those fees for the appeal of the c. 93A claim.  The Tabachniks may, within fourteen days of the issuance of the rescript in this case, submit a detailed and supported submission of the fees sought, in accordance with the procedures set forth in Fabre v. Walton, 441 Mass. 9, 11 (2004).  CT Install will have fourteen days thereafter to file a response.

    Conclusion.  In all respects other than the damages award, the amended judgment is affirmed.  The damages award is vacated as to the amount of damages awarded to the Tabachniks.  The case

---

[11] General Laws c. 149, § 29C, provides in relevant part as follows:  "Any provision for or in connection with a contract for construction, reconstruction, installation, alteration, remodeling, repair, demolition or maintenance work, . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void."

13

is remanded to the Superior Court for entry of a new damages award of $151,700.

<u>So ordered</u>.

By the Court (Vuono, Meade & Walsh, JJ.[12]),

Assistant Clerk

Entered:  February 12, 2024.

---

[12] The panelists are listed in order of seniority.

14